UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

KEVIN D. ROUSE

        Plaintiff,

v.

                **DECISION AND ORDER**
                14-CV-817S

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.

---

   1. Plaintiff Kevin D. Rouse challenges an Administrative Law Judge's ("ALJ") determination that he is not disabled within the meaning of the Social Security Act ("the Act"). Plaintiff alleges that he has been disabled due to left arm pain and left hip pain since sustaining injuries in an automobile accident on November 11, 2006. Plaintiff protectively filed an application for Supplemental Security Income (SSI) benefits on June 29, 2011, which was initially denied. Pursuant to Plaintiff's request, an administrative hearing was held before ALJ Timothy J. Trost on December 4, 2012, at which Plaintiff and his attorney appeared. On January 8, 2013, the ALJ issued a decision denying the claim. On August 5, 2014, the Appeals Council denied Plaintiff's request for review.[1] Plaintiff filed the current action on October 2, 2014, challenging the Commissioner's final decision.

   2. On February 16, 2015, Plaintiff filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket No. 8). On April 17, 2015, the Commissioner filed a Motion for Judgment on the Pleadings

---

[1] The ALJ's January 8, 2013 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

1

and in Response to Plaintiff's Brief. (Docket No. 10). Plaintiff filed a reply on May 8, 2015 (Docket No. 12), at which time this Court took the matter under advisement without oral argument. For the following reasons, Plaintiff's motion is denied, and Defendant's motion is granted.

3. At the time of the hearing, Plaintiff was 43 years old, with a twelfth grade education. (See R. 22).[2] His alleged disabling hip and arm pain resulted from injuries sustained in a November 2006 automobile accident, including left hip dislocation, left acetabular (hip socket) fracture, and left forearm fracture. (See R. 20). Following the accident, Plaintiff underwent left hip surgery, left arm surgery, and physical therapy. (Id.). In September of 2011, Plaintiff sought emergency room treatment, complaining of increased chronic pain in his left arm and hip. (Id.). At that time he began additional physical therapy for his hip. (Id.).

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health and Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979). Substantial evidence is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971). Where evidence is deemed susceptible to more than one rational

---

[2] Citations to the administrative record are designated as "R."

2

interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5. "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health and Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7. This five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner]

next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8. Although the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step of this inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering her physical ability, age, education and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460-61, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9. In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) After his application date, Plaintiff worked a few hours a week as a barber, but this work did not rise to the level of substantial gainful activity (R. 20); (2) Plaintiff's left hip pain (status post left hip dislocation and left acetabular fracture) is a "severe" impairment within the meaning of the Act (id.); (3) Plaintiff does

4

not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (R. 20-21); (4) Plaintiff has the residual functional capacity ("RFC") to perform a wide range of sedentary work, and, specifically, can lift and/or carry up to ten pounds frequently, can stand and/or walk for a total of at least two hours in an eight-hour workday, can sit for a total of six hours in an eight-hour workday (with a short – less than five minute – break every thirty minutes to stand), and can push and/or pull up to ten pounds frequently,[3] (R. 21), but is unable to perform his past relevant work as a construction laborer, barber, driver, or line worker at a factory (R. 22); and (5) Plaintiff's need to stand briefly after thirty minutes of sitting would not significantly erode the occupational base of unskilled sedentary work; therefore, a finding of not disabled is appropriate under the framework of Medical Vocational Rule 201.28 (the "Grids"). (R. 22-23). Thus, Plaintiff was not under a disability, as defined by the Act, at any time from the date of his application through January 8, 2013, the date of the ALJ's decision. (R. 23). Plaintiff challenges the ALJ's determination that he is not disabled and asserts that remand is necessary.

      10.     Plaintiff first argues that the ALJ erred at Step Two in finding that Plaintiff's left arm pain was not a severe impairment. Plaintiff contends this was improper because the analysis at Step Two is simply for "screening out *de minimis* claims," <u>see</u>

---

[3] "The ability to perform the full range of sedentary work requires the ability to lift no more than 10 pounds at a time and occasionally to lift or carry articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one that involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. "Occasionally" means occurring from very little up to one- third of the time, and would generally total no more than about 2 hours of an 8-hour workday. Sitting would generally total about 6 hours of an 8-hour workday. Unskilled sedentary work also involves other activities, classified as "nonexertional," such as capacities for seeing, manipulation, and understanding, remembering, and carrying out simple instructions." SSR 96-9p

Dixon v. Shalala, 54 F. 3d 1019, 1030 (2d Cir. 1995), and that ample evidence exists in the record of his left hand impairment during the period from 2006 through 2011. In addition, Plaintiff argues this error was not harmless because sedentary work requires good use of the hands and fingers. See SSR 96-9p. Plaintiff, therefore, asserts that the ALJ should have included his arm pain and dysfunction in the RFC analysis, and should have consulted a vocational expert at Step Five because it is likely that his alleged weakness and limitations of twisting motions or fast movement would erode the sedentary occupational base.

      11.    In making his determination that Plaintiff's left arm pain was not severe at Step Two, the ALJ stated that after Plaintiff's surgery following the automobile accident, Plaintiff "made reasonable progress toward recovery and was discharged from the hospital after a stay of about five days." (R. 20). The ALJ further noted that the record "contains no evidence of subsequent medical care until September 2011," when Plaintiff visited the emergency room complaining of increased pain in his hip and arm. (Id.). He was prescribed physical therapy for his hip, and "was doing much better since beginning therapy." (Id., citing R. 228-233). The ALJ also found that the "most recent medical records contain no mention of left arm pain." (Id., citing R. 235-244, visits dated November 7, 2011 and November 13, 2012).

      The Commissioner argues, and the Court agrees, that substantial evidence supports the ALJ's severity finding. An impairment or combination of impairments is not "severe" when medical and other evidence establish only a slight abnormality that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. § 416.921; SSRs 85-28, 96-3p, and 96-4p.

Although there is some medical evidence in the record that Plaintiff's left arm injury could cause ongoing functional limitations, even initial physical therapy notes indicated substantial recovery. For example, a treatment note dated March 29, 2007, toward the end of Plaintiff's initial physical therapy for his wrist injury, states that Plaintiff reported his pain was "0" out of 10, (R. 182), and further describes his condition:

> "Pt. with diminished ROM related to severity of [fracture]. Pt. now with functional strength, sensation and endurance for ADL's, home management and most work tasks. Pt. continues to lack full wrist motion (flexion and extension) and some minimal diminishment of supination, but functional ROM for most tasks. The ROM deficit may impact Pt's ability to complete all work tasks efficiently, but this is difficult to predict in the clinic at this time. Strength is well within normal limits for grip/pinch." (Id.).

Notably, the related records refer to Plaintiff's previous work in construction, and the comments about his then-current limitations appeared to be directed at that type of work. (See R. 178, 180, 181, 182). Moreover, at a visit for his hip on February 20, 2007, Plaintiff reported increased pain in his hip from attempting to cut hair, but did not mention his arm. (See R. 186). After being discharged from physical therapy in early 2007, the record contains no evidence that Plaintiff sought medical treatment for either condition until shortly after his adverse disability determination in September 2011. (See R. 224).

More recent evidence pertaining to Plaintiff's arm includes a brief mention of his alleged pain in the September 13, 2011 emergency room note, which states he complained of "increased chronic pain [left] arm and hip x mos, [no] relief OTC meds. Last ortho eval was 2008. Denies having weakness, parasthesis." (R. 225). He was discharged in "good" condition and prescribed pain medication and self-care. (R. 227). On September 22, 2011, Plaintiff began physical therapy. (R. 228). The related note

7

refers to his left arm fracture, but describes his complaint as "insidious increase in hip pain and generalized weakness 9-10 months ago." (Id.). Therapy goals pertained to improving his hip pain and function. (R. 228-233). On November 7, 2011, Plaintiff attended an initial visit at the Cleve-Hill Family Health Center "to establish care and pain control." (R. 237). The treatment note indicates that Plaintiff complains of left forearm pain "at night when he lays on it hand get numb and tingling [sic]," and there is one other reference to "occasional numbness in L hand that occurs once in a while." (Id.). Physical examination revealed slight weakness on the left side: "4+ power through[ou]t on L upper and lower extremity that is chronic. 5+ power on R"; however, the rest of the note related to Plaintiff's hip pain. (R. 237-238). One year later, on November 13, 2012, Plaintiff returned to Cleve-Hill Family Health Center for his hip pain, and, as the ALJ stated, the treatment note does not mention his left arm pain. (R. 240-242).

In addition, at the hearing, the ALJ questioned Plaintiff about his left arm pain and function. Plaintiff testified that "I could probably lift maybe three to five pounds on my left for a considerable amount of time." (R. 42). And in response to the ALJ's question about pushing and pulling motions, Plaintiff answered "I could pull with my right. My left is not as strong as my right, it's fairly weaker, so like I said, I try to just do most things with my right hand." (Id.). The Plaintiff also stated that at the site of the pins in his wrist, "it gets kind of like little shooting pains through there sometimes." (R. 43). When the ALJ asked if he had "any trouble with hands and fingers," Plaintiff replied, "No, my hands and fingers work pretty well." (Id.).

Plaintiff essentially contends that despite his lack of complaints about left arm pain during recent medical visits, his condition meets the *de minimis* standard because

the initial injury and surgical repair was significant. "The mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment is not, by itself, sufficient to render a condition severe." Flanigan v. Colvin, 21 F. Supp. 3d 285, 300 (S.D.N.Y. 2014) (internal quotations and citations omitted); Lohnas v. Astrue, No. 09-CV-685S, 2011 WL 1260109, at *3 (W.D.N.Y. Mar. 31, 2011) aff'd, 510 F. App'x 13 (2d Cir. 2013). Plaintiff bears the burden of showing that he suffers from a severe impairment that renders him disabled. Ferraris, 728 F.2d at 584, citing Carroll v. Sec'y of Health and Human Servs., 705 F.2d 638, 642 (2d Cir. 1983); 20 C.F.R. § 404.1520 (1983). Based on the foregoing review of the record, the Court finds that substantial evidence supports the ALJ's severity determination with respect to Plaintiff's left arm pain.

  12. Plaintiff also asserts the entire sequential evaluation is flawed because the ALJ failed to consider his left arm function in the RFC analysis. The Court finds no such error. "The combined effect of a claimant's impairments must be considered in determining disability" and "the [Commissioner] must evaluate their combined impact on a claimant's ability to work, regardless of whether every impairment is severe." Dixon v. Shalala, 54 F.3d at 1031 (citations omitted); 20 C.F.R. § 404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe' ...."). Indeed, the ALJ mentioned in his RFC analysis that Plaintiff "testified that he is disabled by constant hip pain that prevents him from sitting or standing too long. He also described his arm as 'shattered,'" but Plaintiff "alleged no other medical problems during testimony." (R. 21). The ALJ also noted that Plaintiff "alleged weakness in his left

9

upper extremity that limits his ability to lift." (Id.). Thus, the ALJ did not simply fail to consider Plaintiff's alleged left arm pain and dysfunction in fashioning the RFC; rather, the Court gleans from the opinion that the ALJ found Plaintiff's allegations to be not entirely credible. (Id.).

13. "The ALJ has discretion to assess the credibility of a claimant's testimony regarding disabling pain and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." Marcus v. Califano, 615 F.2d at 27; see also Aponte v. Sec'y of Health and Human Svcs., 728 F.2d 588, 591 (2d Cir. 1984) (credibility determinations generally reserved to the Commissioner, not the reviewing court). A claimant's testimony is credited "to the extent that alleged limitations can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 CFR § 404.1529(c)(4). When finding a claimant allegations of disability not entirely credible, the ALJ must include in his decision "specific reasons for the finding on credibility, supported by the evidence in the case record...." SSR 96–7P, 1996 WL 374186, at *4; see also, e.g., Martone v. Apfel, 70 F.Supp.2d 145, 151 (N.D.N.Y. 1999) ("An ALJ who rejects subjective testimony 'must do so explicitly and with specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his decision is supported by substantial evidence.'") (quoting Brandon v. Bowen, 666 F.Supp. 604, 608 (S.D.N.Y. 1987))

Here, the ALJ considered the medical evidence, Plaintiff's ADLs, hearing testimony, and other evidence in the record in determining that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not

entirely credible." (R. 21). Although the ALJ's analysis is not lengthy, he discusses pertinent evidence undermining Plaintiff's claims of disabling conditions. First, the ALJ states that Plaintiff's treatment history does not support his claim of disability after his initial recovery from the accident, finding that the record contains no evidence Plaintiff sought medical care for either his hip or his arm from the time he finished physical therapy in March 2007 until he visited the emergency room for pain in September 2011. (R. 21-22). The ALJ also considered that Plaintiff's attorney represented to the Agency that all known medical records were submitted at the time of the hearing (R. 22), and that Plaintiff reported taking pain medications, but the medical evidence did not indicate the medications caused adverse side effects. (Id.). The Court further notes that Plaintiff sought emergency care in July of 2011 for a minor unrelated complaint, indicating that medical treatment was available to him during the relevant period. (See R. 204).

The ALJ also determined that Plaintiff's allegations of physical limitations at the hearing far exceeded those he reported to the physical therapist in November 2011, when Plaintiff stated that he had pain when walking more than one mile and sitting more than forty minutes (R. 22, citing R. 228). The record also shows Plaintiff's pain and physical function improved with physical therapy. (R. 22). The ALJ specifically notes that on November 22, 2011, Plaintiff "reported no functional limitations with his walking or with his activities of daily living." (Id., citing R. 232). The Court's review of this treatment note reveals that the physical therapist recorded "subjectively" Plaintiff does not "do a lot", but she gave no specific limitations. (R. 232).

Finally, the ALJ considered that Plaintiff underwent training to obtain a commercial driver license (CDL Class B) in March of 2011, in connection with a job

prospect to drive a school van. (R .22, citing R. 45-47, 117). The ALJ noted that Plaintiff testified he attended training every other day for about three months to obtain the license. (R. 22). After receiving his license, Plaintiff turned down the job because it did not pay enough (Id., citing R. 45-47); therefore, he had the opportunity to work but chose not to for financial, rather than medical, reasons. (R. 22). Additionally, the Court notes that when asked about his CDL training at the hearing, Plaintiff testified "at least it was a sit down job," implying he was capable of the sitting requirements of sedentary work. (See R. 45). Based on a review of the record as a whole, the Court finds that the ALJ's credibility finding, with respect to both of Plaintiff's alleged conditions, was based on substantial evidence.

14. Plaintiff also argues that the ALJ's RFC assessment was not supported by substantial evidence because the record contained no medical expert opinion regarding Plaintiff's ability to complete basic work functions. Therefore, according to Plaintiff, the ALJ had a duty to develop evidence in the form of a medical opinion prior to making the RFC determination. The Commissioner does not dispute that the record lacks such an assessment but argues that the ALJ was under no duty to seek additional evidence because the record contained substantial evidence for the Commissioner to make a disability determination.

Generally, the Commissioner has "an affirmative duty to request RFC assessments from plaintiff's treating sources despite what is otherwise a complete medical history." Graham v. Colvin, No. 13-CV-728S, 2014 WL 3572422, at *4 (W.D.N.Y. July 21, 2014), quoting Johnson v. Astrue, 811 F.Supp.2d 618, 630 (E.D.N.Y. 2011) (internal citations and quotation marks omitted). As this Court has also recently

12

stated, however, "it is not *per se* error for an ALJ to make the RFC determination absent a medical opinion ..., [and] remand is not necessary where 'the record contains sufficient evidence from which an ALJ can assess the [Plaintiff]'s residual functional capacity.'" Lewis v. Colvin, No. 13–CV–1072S, 2014 WL 6609637, at *6 (W.D.N.Y. Nov. 20, 2014), quoting Tankisi v. Comms'r of Social Security, 521 F. App'x 29, 34 (2d Cir. 2013). In addition, the "regulatory language provides ample flexibility for the ALJ to consider a broad array of evidence as 'medical opinions.'" Sickles v. Colvin, No. 12–CV–774 MAD/CFH, 2014 WL 795978, at *4 (N.D.N.Y. Feb. 27, 2014), citing 20 C.F.R. § 404.1527 (including "'statements ... that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [ ] symptoms, diagnosis and prognosis,' claimant's capabilities, and any physical or mental restrictions"). Similarly, "where the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a common sense judgment about functional capacity even without a physician's assessment." Walker v. Astrue, No. 08–CV–0828(A)(M), 2010 WL 2629832, at *7 (W.D.N.Y. June 11, 2010) report and recommendation adopted, No. 08–CV–828A, 2010 WL 2629821 (W.D.N.Y. June 28, 2010), quoting Manso–Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 17 (1st Cir. 1996). Finally, the Commissioner "is entitled to rely not only on what the record says, but also on what it does not say." Dumas v. Schweiker, 712 F.2d 1545, 1553 (2d Cir. 1983) (citing Rutherford, 685 F.2d at 63).

Here, it is apparent from the ALJ's decision and from an independent review of the record that the ALJ's conclusions rested largely on his credibility findings. The ALJ gave Plaintiff "some benefit of the doubt concerning his hip disorder," yet concluded that

he "maintains the residual functional capacity to perform sedentary work," as specified in the RFC finding. (R. 22). The ALJ also noted that the "record contains no medical opinion at variance with this conclusion." (Id.). While the record contains no recent medical opinion that specifies Plaintiff's specific functional abilities, or evidence that an RFC report was requested, the Court finds no per se error in the ALJ's analysis.

The RFC findings based on Plaintiff's credible limitations are supported by substantial evidence. Plaintiff testified that he could lift a gallon of milk with his right hand and that his left hand is weaker, but described pain on exertions as "little shooting pains." (R. 43). The November 2011 physical exam revealed only slightly diminished power on the left side. (R. 238). Plaintiff also testified that he spends most of the day sitting, sometimes for five to six hours at a time watching television (R. 42), he occasionally stands and walks around "a little" (R. 41), but that he can only walk for fifteen minutes at a time, only once a day. (R. 39). The RFC for sedentary work accommodates Plaintiff's ability to sit for up to thirty minutes with a need for standing breaks, consistent with both his testimony and his reported limitations to his physical therapist in November 2011 – that he needed to stand after sitting for about forty minutes (R. 228). In addition, Physical therapy records show that Plaintiff reported decreased pain, increased range of motion, and improved functional mobility with therapy. (R. 232). No other medical records contain or support complaints of such restricted walking ability. The ALJ also specifically asked Plaintiff about his pushing and pulling abilities (R. 42-43), and had the opportunity to assess Plaintiff's physical abilities and demeanor while testifying.

The Court must defer to the ALJ's conclusions when substantial evidence supports them, even if substantial evidence supports Plaintiff's position, and particularly with regard to findings based on credibility. Rosado, 805 F. Supp. at 153. Here, the Court finds the RFC determination was based on substantial evidence because the record contained ample evidence for the ALJ to make a finding on disability, and he was not obligated to seek out additional medical opinions specific to Plaintiff's functional abilities.

15. Finally, Plaintiff argues that the ALJ erred in relying on the Grids at Step Five, and he should have consulted a vocational expert. At the fifth step of the sequential analysis, the ALJ must determine whether, based on the claimant's age, education, work experience, and RFC, the claimant could "make an adjustment to other work." 20 C.F.R. § 404.1520(a)(4)(v). As part of this analysis, the ALJ must determine whether there are jobs that the claimant could perform that exist in sufficient numbers in the national economy. SSR 83–10, 1983 WL 31251, at *4 (1983). When the claimant has only exertional impairments, the ALJ may meet this burden by applying the Medical–Vocational Guidelines, also known as the Grids. Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir. 1986); see also SSR 83–11, 1983 WL 31252, at *1 (1983) (use of Grids to direct conclusion of "disabled" or "not disabled" allowed only when criteria of a rule in the Grids are "exactly met"). When a claimant experiences nonexertional limitations, the ALJ, in certain situations, cannot satisfy this burden through use of the Grids alone. Bapp, 802 F.2d at 604. The Second Circuit has explained that the ALJ may not solely rely on the Grids if a nonexertional limitation "has any more than a 'negligible' impact on a claimant's ability to perform the full range of work." Selian v.

Astrue, 708 F.3d 409, 421 (2d Cir. 2013) (quoting Zabala v. Astrue, 595 F.3d 402, 411 (2d Cir. 2010)). A nonexertional impairment is non-negligible "when it ... so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." Zabala, 595 F.3d at 411 (internal quotations marks omitted).

Whether expert testimony is required must be determined on a "case-by-case basis." Bapp, 802 F.2d at 605–06. "[T]he mere existence of a nonexertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the [Grids]." Id. at 603. In short, the ALJ may apply the Grids – without calling a vocational expert – if they "adequately reflect a claimant's condition." Id. at 605.

Here, as discussed above, the ALJ reasonably concluded that Plaintiff retained the RFC to perform sedentary work, with occasional standing breaks. The ALJ also concluded that Plaintiff's "need to stand briefly after 30 minutes of sitting would not result in a significant erosion in the occupational base of unskilled sedentary work." (R. 23). Although early physical therapy notes from 2007 established some functional limitations in Plaintiff's left arm due to the fracture, surgery, and metal components restricting his range of motion (See R. 182), the ALJ did not mention Plaintiff's arm at Step Five. (R. 23). Nonetheless, considering the entire record, including Plaintiff's own testimony, the Court finds that the ALJ could properly conclude that the credible strength and motion limitations in Plaintiff's non-dominant left arm also would not significantly diminish his capacity for sedentary work. Moreover, given his completion of the CDL training and the related job offer during the relevant time period, Plaintiff has,

himself, identified an occupation he is capable of obtaining and performing.  Therefore, the ALJ did not commit reversible error in failing to consult a vocational expert.

16. Having considered Plaintiff's challenges to the ALJ's determination, as well as the additional evidence made part of the record by the Appeals Council, this Court is satisfied that the ALJ committed no reversible error, and that his decision is based on substantial evidence.  Defendant's Motion for Judgment on the Pleadings is therefore granted and Plaintiff's motion seeking the same relief is denied.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 8) is DENIED;

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 10) is GRANTED;

FURTHER, that the Clerk of the Court is directed to take the necessary steps to close this case.

SO ORDERED.

Dated:  November 21, 2015
           Buffalo, New York

                                                                /s/William M. Skretny
                                                              WILLIAM M. SKRETNY
                                                           United States District Judge